versus Central Dauphin School District. Mr. Ostrowski. Yes, good morning, your honors. May it please the court, Andy Ostrowski, counsel for the appellant who is the plaintiff below in this case. This is not, it's not a unique case in terms of First Amendment analysis. I mean, every fact, every case in a First Amendment case is unique factually, but in terms of the overall factual matrix, there's nothing real unique about it in terms of anything that this court has considered in the past. There's really no, never been, and there is not now, a dispute on whether there is First Amendment protected activity at issue. Just real generally, it was involved a teacher at a high school, reports of some mold conditions, public reports, things of that nature. The district judge did a pretty careful job here, and I understand, I'd like to hear what you have to say about the pattern argument here. Well, your honor, did the district court do a, is a 40-page opinion a careful job? Because I look at page 49 of the appendix, and the error is manifest and clear right in the way the court framed the issue. Under the second prong of the retaliation test, the court must determine, one, whether the acts attributed to defendants are adverse employment actions, and two, if so, whether the defendants personally participated. This notion that there's an adverse employment action requirement in the First Amendment retaliation case is nothing that is nowhere in the law. The only standard that has ever applied in a First Amendment case is the standard articulated by the court in Supan back in 2000, whether the act, the conduct, is sufficient to deter a person of ordinary firmness in the continued pursuit of his or her First Amendment rights. You know, the old, the old Rutan versus Republican party adage, you know, an act as trivial as denying an employee a piece of birthday cake, if it is intended to retaliate for, for a past protected activity, is sufficient under the First Amendment. Where the, where the alleged retaliation is speech. Haven't we applied a bit stricter scrutiny than your birthday cake example would indicate? When the protected, I'm sorry, your honor. When the act, when the alleged retaliatory activity is speech, and in this instance it seems to be all speech. Now you can correct me if I'm wrong, but it appears to be complaints that the school district officials said things to the press, or said things to Ms. Smith, or said things to other people. When it's, when it's speech, my question to you is, is there a somewhat higher standard or threshold to meet in trying to make the case that a person of ordinary sensibilities would, would be deterred? Before I answer the question, I neglected specifically to reserve three minutes for rebuttal. I see that the clerk already accounted for it. Thank you. Your honor, no. You know, I mean, I, and frankly, it concerns me to hear that there's some kind of heightened scrutiny being, being suggested. This is a First Amendment case. I'm asking you a question. I'm not suggesting anything. Oh, I understand, your honor, but, but the term heightened scrutiny for a civil rights litigator is not a term that I like to, that I'm very comfortable with. And it's been, it's been bandied about, and it's been, you know, tried to be employed in the, the pleading context. And when I hear, and so, so, well, I don't mean to suggest that you're saying anything other than answering questions, but no, there is no, there is no heightened scrutiny standard. And one of the, one of the problems that we're dealing with here is, you know, a conceptual problem, an analytical issue that somehow the courts, and, and, and I've dealt, you know, a lot with Judge Rambo in, in the past, and, you know, I've had a number of First Amendment cases for, before her. But to somehow, I forget my precise point, but to suggest, you know, to, to, to, to, to say that because it, in, in of itself is not a, a retaliatory action, does not deprive it of, of relevance, does not deprive it of materiality on the motives and intent of the party. So these, these issues that Judge Rambo considered in terms of, well, they, they said that she was being less than truthful when she was at the press, and things of that nature. Those, to me, you know, I, they are not independently adverse or retaliatory actions in any event. What they are, is they are evidentiary. I thought you were alleging, I thought you were alleging that the retaliation consisted in things like the comments that Superintendent Hassan made to the, to the press in response to your client's press release. Certainly, Your Honor, that is directly relevant. Okay, so if you're saying that that's an example of retaliation, my question to you then is, what do we make of the assertion that we find in some case law, for example, Suarez Industries v. McGraw, the Fourth Circuit case, it's been quoted a bit in our circuit, that speech does not adversely affect the citizens First Amendment's rights, rights even if defamatory. Doesn't that imply that public officials have a, have a First Amendment right to speak to, and that that can't be turned into an or it can't be turned into a, a, a retaliatory act for which liability would lie? Well, I, I think we're taking this too far down, down the, the, you know, precise legal analytical road here, because to me there is, you know, the evidence of what speech, whatever the, the public actor's speech is, that is evidence of retaliation, if not legal retaliation in itself. And if that speech in itself was sufficient to deter a person of ordinary firmness in the pursuit of his or her First Amendment rights, then indeed, then that is a retaliatory speech. You've lost me, Mr. Ostrowski. You're gonna have to help me with that. I think I heard you say, even if it's not retaliation to speak as a response to an employee, a public employee's statements, that it's evidence of retaliation, and then I thought I heard you say that it is in effect retaliation because it's evidence of retaliation. No. Am I following you? No, no. I said, I said that, that the speech itself actually could, if sufficient to deter a person of ordinary firmness, which is what juries sit in jury boxes to make that determination, if it is sufficient to deter a person of ordinary firmness in pursuit of their rights, it could conceivably be retaliate, it could conceivably support a First Amendment retaliation case in and of itself. And if I can, if I can put it in terms of the Brennan case, there was, there was one fact in the Brennan case that, that sparked footnote 16, and that fact was there was a complaint that the gentleman, Mr. Brennan, they were no longer capitalizing his title, and they were, you know, spelling his name, you know, differently or something like that. This court, frankly, looked at it and said, you know, that, that's pretty much a diminutive act. What the court was saying is that as a matter of law, you know, the federal courts are not going to sit here and have somebody, even if they engage in protected activity, come in and occupy judicial resources because somebody's not putting a capital letter on their name. However, I would say that even in the context of Brennan, even though that is not independently a retaliatory action or adverse employment action, it's still evidence. It's still evidence of the state of mind of the defendants, and that's the distinction I was trying to draw, Your Honor, that the, the, the remarks and words of the public employer or supervisor, you know, they, they could be retaliation, they could support a claim all by themselves, and they could not support a claim all by themselves. But if they cannot support a claim all by themselves, does that lead to the conclusion that they are therefore irrelevant? I don't think so. I think that they are still relevant to establish the state of mind of the speaker, and the state of mind of the speaker in the context of the history of the events. So that's the best way I can, I can summarize, address that. And then working that back to the, the district court's analysis, I mean, to go through whether these are adverse employment actions, I started to creep in, in the recent cases, this adverse employment action notion. That is a Title VII notion. The analysis under Title VII and First Amendment are distinctly different. You're determining employer liability under Title VII. But you, you cited to Brennan a minute ago, and in Brennan, didn't we approve doing the sort of thing that you're complaining happened here, that is, looking at the specific acts that are claimed to be retaliatory, and trying to understand them in the context of the case? Well, my understanding of Brennan was that the court looked at it that way, because that's the way the argument was presented. That in, and I was, it was, it was, and I mean, that's the way it was presented. Well, when, when the court, but the court seemed to go down that path, and I couldn't understand myself. I think that Brennan, I think that Brennan, in that specific regard, is not a good decision. Because to, to, to break down, I mean, to, to require courts and appellate courts to look at discrete factual circumstances, and to isolate that from the entire history of a case, to determine whether that independently can support a First Amendment cause of action. I mean, that, that to me is, is, is an awfully intellectually cumbersome process, when really the only analysis is, did this person allege facts that should get them to trial? And there is never a First Amendment case that I am aware of that said, in order to get to trial on a First Amendment case, you have to show an adverse employment action. You know, the, the, the theory is that this course of conduct, whether in toto or in, individually, you know, supports these I mean, to shift that now to how it even gets more complicated that the way the court handled it in this case is, you know, you take discrete facts and then analyze individuals, you know, active hands-on approach with respect to each fact. I mean, you know, you're just never going to tell a complete First Amendment story if this is the way the courts are going to handle First Amendment summary judgment decisions. To what, to what significance must a retaliatory act to be actionable on a First Amendment context rise? For example, if a person working for a public agency made all kinds of public statements that were protected, First Amendment statements, about problems with the agency, and as a result when the people in the office were having a Christmas party, they didn't invite that person to the Christmas party, but yet the person got all the pay increases and everything else was due, would that be something that would be a retaliatory, it would be a retaliatory act, but could you actually sue for that? I would take that case, you know, I mean, I don't know, I don't have any credibility saying I would take that case, but why not? I mean, that, you know, if it is done by... Well, why not, because, you know, there's lots of little things in life that you can't, you know, I mean... But, Your Honor, we're across the street from Independence Hall, and this is the First Amendment of the Constitution, and the analysis is a little bit different here than when you're talking about not getting a pay raise because of some legislation about, you know, doing, standing up, and abiding by, and enforcing, and speaking out. They really don't want the person at the party, the Christmas party, because they really can't stand him. Well... I'm dealing with him more as the party, as far as they're concerned. That sounds like the exact analysis, your question, your answer, and your follow-up question are exactly what juries should be doing in these cases. I mean, that's the jury function. I think there's no role for a judge to say, look, every perceived slight does not amount to a constitutional violation. And there are some things that we will not impose upon municipalities and government entities in the name of trying to soothe somebody's feelings. And if it's not something we can see would deter somebody of ordinary sensibility, if it's de minimis, we're just not letting that go to a jury. You don't think that's... De minimis cura lex has been part of the law as far as I know since the country has been here. I mean, that's what courts do, but... And then, since a court has to make some judgment in that regard, I think I hear you conceding, doesn't the court have to look at what's alleged and make some judgment about specific allegations instead of saying, well, generally I get a vague feeling of unease about this? It's got to look at what's alleged to be the retaliation and make some decisions about does this even hit the point where it's past de minimis, it would deter somebody of ordinary sensibility. Judges got to do that, right? But not capitalizing someone's name independently is one thing. Not capitalizing someone's name in the course of seven adverse employment actions and hostile and abusive conduct. I'm not saying we had all this here, but there's two different analyses. And if somebody came before the court on a de minimis issue, the court can determine that's de minimis. But how can you determine that one fact is de minimis? De minimis implies the entire claim is de minimis. Not that one fact in the context of a much larger intellectual analysis is de minimis. My time is right. Thank you. Mr. Ostrowski, thank you very much. We'll have you back on rebuttal. Thank you. Ms. DeVitore. Good afternoon, Your Honors. I'm Stephanie DeVitore here today on behalf of the Appellee Central Dauphin School District and the individual appellees, Dr. Hasson, Mr. Mazetesta, and Ms. Hollins. I'd like to start the court's questioning and Mr. Ostrowski's discussion focused on summary judgment. And I think that the law is clear in this circuit and throughout the country that in order to survive summary judgment on a 1983 free speech retaliation claim, there must be sufficient evidence or sufficient evidence to create a factual dispute concerning whether the individual. Let me ask you this. The district judge, I thought, looked at each one of the matters that were complained of and found most of them wanting. But did the district judge sufficiently consider all of them as a pattern of conduct and deal with them in the totality? I believe that the district court judge properly applied federal law to the evidence in this case. It was suggested that nowhere in the law is there this requirement that the retaliation constitute an adverse employment action. And I think that's directly contrary to longstanding precedent of this court. For example, the Robinson decision, which is as early as 1997, but more recently the Suarez, Supan. All of these cases state that in order to proceed, the alleged retaliation must rise to the level of an adverse employment action. So you think you're adversarying the state's law then? Yes, Your Honor, I do. And I think it's fully detailed in our brief. But the Brennan case constituted judgment as a matter of law. But in the Supan decision, this court actually found that the summary judgment was improperly granted because the alleged retaliation in that case, assigning an employee low rankings, constituted an adverse employment action. It is part of federal law that in these claims, the court needs to look at every alleged act of retaliation to determine if it meets the threshold. I think it's also important to note that the plaintiff in this case has not made a hostile work environment claim. It's maintained in the brief that the court aired. It points to Brennan and suggests that there's a hostile work environment. That is not what was alleged in the complaint, in the amended complaint. There's been no allegation whatsoever in this proceeding until briefs were filed of hostile work environment. Can I ask you about the decision to keep Ms. Hochlander, and I'm not sure if I'm saying her name correctly or not. That's correct. Okay. The decision by the district court to keep her off the stand. She, the judge, indicated that she didn't think there was really anything relevant in what Ms. Hochlander was going to testify to. I understood your opponent's assertion at trial to be she's going to directly contradict what Mr. Mazetesta says, and that that would be impeaching, and that by implication it would show an ill motive, hostility. What's wrong with that assertion, that there's an opportunity to show bias and an opportunity to show an ill motive if Ms. Hochlander testifies and says, yeah, he wanted to read all these email exchanges offered to come to my house. He wanted to get all that inside information. I believe, Your Honor, that the district court properly found that Mr. Mazetesta didn't actually testify about coming to the house, but I think more importantly the court found that Ms. Hochlander's testimony allegedly to impeach Mr. Mazetesta was not relevant to any of the issues remaining at trial. It concerned a claim of withholding information that was not lodged against Mr. Mazetesta. Does it matter that it wasn't lodged against Mr. Mazetesta? If the assertion by the plaintiff is, in effect, they're out to get me, and they have a piece of proof that shows what they assert is ill motive by one of the folks who's out to get her, does it matter that the specific issue might not lead to liability for Mr. Mazetesta, or is it relevant about the mindset of the actors generally? I think, Your Honor, that it does matter, that it doesn't, would not lead to the potential liability of Mr. Mazetesta. Why? Because it isn't directly impeaching testimony, and so it's only, it would be highly prejudicial and not relevant to any of the remaining claims. Wouldn't be, it's not relevant to bias at all? No, Your Honor, I don't believe it is. I believe that the plaintiff had the burden of producing evidence that the alleged retaliatory actions were directly caused by the protected speech, and I don't believe that it would be relevant to that burden of proof. We believe that the district court properly applied, you know, the standards in federal law in reaching its decision on summary judgment, both in requiring that it be demonstrated that the retaliation constituted adverse employment action, also in ruling that the plaintiff was required, in order to maintain the claims against the individual defendants, to demonstrate that the individual defendants had actually participated in the alleged retaliatory conduct, or had knowledge of and supervisory authority over those individuals, which is another issue that has been raised by Ms. Smith on appeal. Specifically, Ms. Smith points to the Robinson decision, and claims that all the claims should have proceeded based on agency law, as per Robinson. I think review of the Robinson decision is clear, that Judge Rambo correctly interpreted the law, in order for the claim against an individual defendant to proceed, there must be genuine issues of material fact as to whether they participated in the alleged action, or had knowledge of the alleged action, and was supervising the alleged perpetrator. How do you distinguish this case from Merkle v. Upper Darby, where there appear to be some factual similarities, and that there were comments made to the press by the district, and this court indicated that there was enough in what happened there, that it should have been permitted, or at least it was actionable, what the school district had done in speaking to the press. How do you distinguish it? Well, I believe in this case, the alleged retaliation that the plaintiff sets forth in the complaint, are the four claims that actually were presented during trial, the withholding of information, denial of the coaching position, forced medical leave, and her class assignments after she was returned. The remaining claims that were presented, and then discounted at summary judgment, weren't claims that the school district went to the press, but instead claims that Dr. Hassan made false statements about the plaintiff, claims that Mr. Mazetesta told others he believed the plaintiff was lying, and that the school district prohibited Ms. Smith from teaching about the environmental conditions in the school in her classroom. And so I believe that those are distinct from the actual factual allegations in Merkle, and certainly I think it's the Robinson case where this court held that mere public comments and oral reprimands do not rise to the level of adverse employment action. There is a claim that the district court abused her discretion with respect to Mr. Ferguson. Yes, Your Honor. In not delaying the trial to permit him to testify. Yes, Your Honor. I believe it's a bit unclear. The fact was that one week prior to the trial, Mr. Ferguson had a heart attack. Counsel for Ms. Smith didn't file a formal motion, but made a verbal request that the trial be delayed until he's able to testify. In the brief submitted to this court, it suggested that the decision rejecting that request by Judge Rambo was unreasonable because videotaped depositions are boring and lose impact on jurors. And I think that federal law is clear, and we can't set a precedent that the courts will continue a trial every time a witness, not even a party, is unavailable due to illness. In addition, it would render Rule of Evidence 804A4 completely meaningless. I mean, that's an express exception to the hearsay rule to present deposition testimony when the witness is unavailable due to physical illness. Further, the cases cited in our brief, including the Beard decision, demonstrate that there's no abuse of discretion for refusing to delay a trial due to witness unavailability when the evidence is available from other sources. This isn't even a case where they had to reach to other witnesses. This is a case where Mr. Ferguson was videotaped in his deposition, and those excerpts were permitted to be played to the jury. We believe that's consistent with federal law as well. Any other questions? I don't have any questions.  Thank you, Mr. Attorney. Thank you very much, Your Honor. Mr. Ostrowski? Yes, thank you, Your Honor. One thing that I neglected to mention, that even if we exclude the summary judgment analysis, which we still contend was in error, we allege a First Amendment case, the term hostile work environment, that's another Title VII term. We don't have to allege a hostile work environment in a First Amendment case. You never did. You have to allege and prove that the conduct was sufficient to deter a person of ordinary firmness. But even if we exclude all that from the analysis, there were four factual matters. I'm not sure you could retaliate against a person and have a First Amendment right if, for example, you burned a person's house down. Absolutely. And that would not be an adverse employment. So, I mean, there has to be some area where it doesn't have to be neither or employment. That's my precise point. You know, this whole adverse employment act. Christmas party might not reach it, but burning a house down. Well, you know, that won't be there, but I think the Christmas party would. Was there any allegation in this suit, however, that the retaliation was occurring outside the context of employment? I mean, there's no Ms. Hasson, Dr. Hasson, whoever's, I'm not sure what her title is, was going to burn my house down. All the allegations seem to be focused on things associated with the employment, right? That's a factual matter. I don't necessarily agree. I don't think that Mr. Mazetesta. I'm asking you whether that's true or not, and if it's not true, tell me what evidence you had or what allegations you had that don't fit that paradigm, that is within the employment context. The issue of Mr. Mazetesta wanting to go to Ms. Hoaglander's house and sit at her computer at her house and read her emails. That, I mean, it all, yeah, it all stems from and relates generally to the employment setting, but so does burning down someone's house who works for you in that context. Why is it retaliation to go to somebody else's house and read emails? Well, and I think that Judge Jordan asked the question there. I mean, that's indicative of a state of mind. I'm not saying that that's a retaliatory act in itself. I mean, I'm getting trapped into making the analytical fallacy that I think that the courts are making in these things, and that is by having to parse and identify when the relevant question is, is this course of conduct or this single act or this one event or these two events or these 17 events sufficient to deter a person of ordinary firmness in the continued pursuit of their rights? If I can shift, even I think that there's agreement from the district court and maybe even this court that there were four matters that went to trial. There was a Rule 50 motion granted. I mean, my understanding of Rule 50 versus Rule 56 is that they are largely the same standard. These were the exact issues that were considered on summary judgment. The testimony at trial was not in variance with any of those issues, yet the court at trial took three of those issues away from a jury, and there's just no support in the record for that. Well, when you say the testimony trial was not at all in variance with the testimony before trial, let me ask you about one example, which I thought was intriguing at least. In her deposition testimony, Ms. Smith indicated that she thought that a teacher with less building seniority than she had was given a classroom, and the fact that she was a floater or a traveling teacher is one of the things that apparently was identified as an example of retaliatory conduct. Yet at trial, the testimony appeared to me to indicate that she acknowledged, no, this teacher, in fact, did appear to have more building seniority than she did, the teacher she had identified at her deposition, a football coach who evidently had a year in the old school while she was out on leave. Now, those are two very different sets of evidence. One, there's a teacher with less building seniority getting a classroom when I'm not, and then at trial, that one example evaporates. So if I've read the record correctly, doesn't that undermine your assertion that nothing different occurred at trial than occurred pretrial? That would undermine that assertion, Your Honor. Okay. We have the sanctions issue. May I address that just for about 30 seconds? Please. You have counsel enter an appearance, file an answer, file motions to dismiss for defendants. Then when it comes time to serve them with depositions, the plaintiff has to go out and carry the burden and expense of trying to serve people with depositions, and then it comes time to their depositions, and that counsel says he's representing them on the record. Now, there's a lot more that goes on. You know, there's a lot of informal on the telephone trying to work this stuff out in the Middle District, and there was a lot of telephone calls about this issue, and for this court to not get on that phone and tell that defense attorney, you get those people to your depositions. That was an abuse of discretion in itself, and this is the pall that we work under. We're running around chasing people around trying to get depositions and losing sight of, you know, the facts that I can't address now because I had to spend 17 hours getting a witness for a deposition rather than 17 hours studying Brennan and his progeny. I mean, that is inherently unfair, and I think that the court needs to take a close look at that issue. Good. Thank you, Mr. Ostrowski. Thank you. Thank you, Ms. DiVitore. The case was well argued. We will take the matter under advisement.